## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KHAWLA TAYEH,
an individual,

       Case No.:

      Plaintiff,

v.

DISCOVER PRODUCTS, INC.,
a/k/a DISCOVER
FINANCIAL SERVICES,
d/b/a DISCOVER BANK,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.
_____/

## PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, KHAWLA TAYEH, by and through the undersigned counsel,

pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Aaron

M. Swift, Esq. as Lead Counsel for Plaintiff.

## COMPLAINT

**COMES NOW**, Plaintiff, KHAWLA TAYEH (hereinafter, "Plaintiff"), by and

through the undersigned counsel, and hereby sues Defendants, DISCOVER

PRODUCTS, INC., a/k/a DISCOVER FINANCIAL SERVICES, d/b/a DISCOVER

1

BANK (hereinafter, "Discover"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action brought by an individual consumer for damages for Discover's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Discover improperly credit-reported and subsequently verified objectively-inaccurate information related to a credit card account (hereinafter, the "Account") on Plaintiff's consumer credit reports and in Plaintiff's consumer credit files as maintained by Equifax, Experian, and Trans Union. More specifically, despite Plaintiff being adjudicated as not responsible for the credit card account (i.e. the Account), Defendants subsequently reported the Account with a balance past due and included delinquent payment history resulting in the Account being reported as a negative, adverse, and/or derogatory tradeline Account on Plaintiff's Equifax, Experian, and Trans Union reports and damaging Plaintiff's credit scores and credit reputation.

2.    Additionally, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to inaccurately report the Account with negative information after Plaintiff repeatedly disputed to Equifax, Experian, and Trans Union wherein Plaintiff

advised Equifax, Experian, and Trans Union that such reporting was false and inaccurate.

3.     Further, this is an action for damages for Equifax's violations of the FCRA wherein Equifax failed to refer Plaintiff's dispute regarding identity theft and fraud to each of the other consumer reporting agencies after receiving multiple disputes from Plaintiff and wherein Equifax failed to block information identified in Plaintiff's Equifax credit reports resulting from identity theft within four (4) business days of receiving disputes from Plaintiff that properly identified Plaintiff, included an identity theft report filed with a law enforcement agency, identified the information resulting from identity theft and fraud, and asserted that Plaintiff did not initiate or authorize the transactions resulting in the information reported by Equifax.

## JURISDICTION, VENUE & PARTIES

4.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq.*

5.     Defendants are subject to the jurisdiction of this Court, as Defendants each regularly transact business in this District.

6.     Venue is proper in this District as Defendants each regularly conduct business in this District, and the acts and transactions described herein occur in this District.

7.     At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

8.     At all material times herein, Discover is a foreign for-profit corporation

with its principal place of business located at 2500 Lake Park Boulevard, West Valley, Utah 84120.

9.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

10.     At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

11.     At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

12.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

13.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

14.     Under the FCRA, if a consumer disputes the completeness or accuracy

of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

15.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

16.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

17.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other

consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

18.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

19.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

20.     At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

21.     At all material times herein, Discover, itself and through its subsidiaries, regularly services consumer credit and credit-reports information associated with the same in Hillsborough County, Florida.

22.     At all material times herein, Discover is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by

6

15 United States Code, Section 1681s-2.

23.     At all material times herein, Discover reports information concerning a credit card account to Equifax, Experian, and Trans Union including but not limited to, a tradeline account related to an alleged Discover Account, referenced by account number ending -0892 (hereinafter, the "Account").

24.     At all material times herein, Plaintiff was adjudicated as not responsible for the balance owed on the Account because Plaintiff's former spouse had opened the Account in her name without her knowledge or consent.

25.     Notwithstanding    the    immediately-aforementioned    adjudication, Discover failed to request that Equifax, Experian, and Trans Union delete the Account from Plaintiff's credit reports.

26.     At all material times herein, Discover furnishes incorrect and/or incomplete information concerning the Account to Equifax, Experian, and Trans Union—continuing after Plaintiff's repeated disputes—despite Plaintiff being adjudicated as not responsible for the Account due to fraud and identity theft.

27.     Discover furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

28.     At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section

1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

29.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

30.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

31.    During or about 2019, Plaintiff's former spouse, Allen Tayeh, opened a credit card account in Plaintiff's name, without Plaintiff's knowledge or consent (the "Account").

32.    Shortly after opening the Account, Allen Tayeh transferred his Capital One credit card account balance to the fraudulently opened Account, resulting in a fraudulent balance on the Account.

33.    During or about 2021, Plaintiff filed a petition to divorce Allen Tayeh in the Superior Court of Gwinnett, County, Georgia, identified by case number 21-A-00289-7 (hereinafter, "Divorce Proceedings").

34.    During the Divorce Proceedings, Allen Tayeh admitted in court that the Account balance belongs to him because it resulted from Allen transferring the

outstanding balance on his Capital One credit card account, and the Court ordered Allen Tayeh to pay the Account balance.

35.    To be clear, Allen Tayeh was ordered to pay the balance on the Account, not Plaintiff.

36.    On or about September 12, 2022, the Court entered a Final Judgement and Decree of Divorce in Plaintiff's Divorce Proceedings, confirming that Allen Tayeh was solely responsible for the Account opened in Plaintiff's name and Plaintiff was no longer personally responsible for the payments on the Account.

37.    To be clear, Plaintiff is not and was never responsible for Allen Tayeh's Capital One credit card account, nor was Plaintiff responsible for the balance on the Account.

38.    On or about November 1, 2023, Plaintiff filed a police report with the Zephyrhills, Florida Police Department, wherein Plaintiff swore under penalty of perjury that Allen Tayeh fraudulently opened the Account in Plaintiff's name.

39.    Additionally, during or about 2023 and 2024, Plaintiff submitted disputes to the Consumer Financial Protection Bureau, wherein Plaintiff asserted that Allen Tayeh fraudulently opened the Account in Plaintiff's name without Plaintiff's consent

40.    In January 2025, Plaintiff obtained copies of her consumer disclosure reports from Equifax, Experian, and Trans Union.

41.    Despite Plaintiff being adjudicated not responsible for the balance on the Account no later than September 12, 2022, Discover reported the Account to Equifax, Experian, and Trans Union with inaccurate, incomplete, and/or materially misleading

information.

42.    More specifically, as of January 2025, Discover, Equifax, Experian, and Trans Union reported the Account as "charged-off" with an alleged balance due and past-due of $14,296 and a balance charged off of $14,296.

43.    To be clear, any balance remaining owed on the Account is owed by Plaintiff's former spouse, not Plaintiff, as Plaintiff was adjudicated as not responsible for the Account no later than September 12, 2022.

44.    As such, it is inaccurate and/or materially misleading to report the Account on Plaintiff's credit reports and/or in Plaintiff's credit files.

45.    On or about January 15, 2025, with the assistance of her attorneys, Plaintiff sent a letter to Equifax, Experian, and Trans Union disputing Defendants' credit reporting of the Account, advising that the Account should be deleted, and demanding that Equifax, Experian, and Trans Union investigate and update accordingly (hereinafter, Plaintiff's "First Dispute").

46.    Plaintiff enclosed copies of her Driver's License, Social Security Card, residential lease agreement, Zephyrhills Police Report, and a copy of the Final Judgement and Decree of Divorce in support of her First Dispute.

47.    Equifax received Plaintiff's First Dispute.

48.    Equifax communicated Plaintiff's First Dispute to Discover, including all enclosed documents.

49.    Discover received Plaintiff's First Dispute from Equifax.

50.    Experian received Plaintiff's First Dispute.

51.    Experian communicated Plaintiff's First Dispute to Discover, including all enclosed documents.

52.    Discover received Plaintiff's First Dispute from Experian.

53.    Trans Union received Plaintiff's First Dispute.

54.    Trans Union communicated Plaintiff's First Dispute to Discover, including all enclosed documents.

55.    Discover received Plaintiff's First Dispute from Trans Union.

56.    On or about January 25, 2025, Trans Union sent a letter to Plaintiff, acknowledging receipt of Plaintiff's First Dispute and advising that results would be sent to Plaintiff at a later date.

57.    However, Plaintiff did not receive any further communications from Trans Union regarding her First Dispute and did not receive dispute results.

58.    As such, Trans Union failed to provide dispute results to Plaintiff.

59.    Despite Plaintiff's First Dispute, Trans Union and Discover *continued* to report the Account as "charged-off" with an alleged balance due and past-due of $14,296 and a balance charged off of $14,296.

60.    On or about February 11, 2025, Equifax sent a letter to Plaintiff in response to Plaintiff's First Dispute in which Equifax advised that Equifax and Discover verified their reporting of the Account as past-due and delinquent.

61.    Despite Plaintiff's First Dispute, Equifax and Discover *continued* to report the Account as "charged-off" with an alleged past-due, charged-off balance of $14,296.

62.    Plaintiff did not receive any communications from Experian regarding

11

her First Dispute and did not receive dispute results.

63.   As such, Experian failed to provide dispute results to Plaintiff.

64.   Despite Plaintiff's First Dispute, Experian and Discover *continued* to report the Account as charged-off with an alleged past-due balance of $14,296.

65.   Clearly, Discover, Equifax, Experian, and Trans Union each failed to conduct a reasonable investigation in response to Plaintiff's First Dispute, because if Discover, Equifax, Experian, and Trans Union had conducted reasonable investigations and re-investigations, Defendants would have known that Plaintiff was adjudicated not responsible for the Account no later than September 12, 2022—as reflected in public records.

66.   Discover, Equifax, Experian, and Trans Union's failure to conduct reasonable investigations and re-investigations into Plaintiff's First Dispute was unreasonable given the information provided in Plaintiff's First Dispute.

67.   As of March 2025, Discover, Equifax, Experian, and Trans Union were each still inaccurately reporting the Account as "charged-off" with an alleged past due balance of $14,296.

68.   On or about March 5, 2025, with the assistance of her attorneys, Plaintiff sent *another* letter to Equifax, Experian, and Trans Union *again* disputing Defendants' credit reporting of the Account, *again* advising that the Account should be deleted, and *again* demanding that Equifax, Experian, and Trans Union investigate and update accordingly (hereinafter, Plaintiff's "Second Dispute").

69.   Importantly, Plaintiff enclosed copies of her Driver's License, Social

Security Card, residential lease agreement, Zephyrhills Police Report, a copy of the Final Judgement and Decree of Divorce, and relevant pages from Plaintiff's divorce hearing dated November 1, 2021 in support of her dispute.

70.     Plaintiff's Second Dispute provided Equifax, Experian, and Trans Union with information sufficient to identify Plaintiff and investigate Plaintiff's Second Dispute.

71.     Equifax received Plaintiff's Second Dispute.

72.     Equifax communicated Plaintiff's Second Dispute to Discover, including all enclosed documents.

73.     Discover received Plaintiff's Second Dispute from Equifax.

74.     Experian received Plaintiff's Second Dispute.

75.     Experian communicated Plaintiff's Second Dispute to Discover, including all enclosed documents.

76.     Discover received Plaintiff's Second Dispute from Experian.

77.     Trans Union received Plaintiff's Second Dispute.

78.     Trans Union communicated Plaintiff's Second Dispute to Discover, including all enclosed documents.

79.     Discover received Plaintiff's Second Dispute from Trans Union.

80.     On or about March 13, 2025, Equifax sent a letter to Plaintiff stating that Equifax was unable to identify Plaintiff based on the information provided in Plaintiff's Second Dispute.

81.     Importantly, Equifax clearly received sufficient information to identify

Plaintiff because Equifax previously identified Plaintiff's credit file and the Discover Account after receiving Plaintiff's First Dispute—which included the same personal identifying documents included in Plaintiff's Second Dispute—and Equifax sent dispute results in response to Plaintiff's First Dispute stating that Equifax verified its reporting with Discover.

82.    Equifax did not send dispute results to Plaintiff regarding her Second Dispute.

83.    On or about March 27, 2025, Experian sent a communication to Plaintiff wherein Experian advised that it would not block its reporting of the Account.

84.    Plaintiff did not receive any further communications from Experian regarding her Second Dispute.

85.    On or about March 29, 2025, Trans Union sent a letter to Plaintiff in response to Plaintiff's Second Dispute, in which Trans Union advised that Trans Union and Discover verified their reporting of the Account as past-due and delinquent.

86.    Despite Plaintiff's Second Dispute, Trans Union *continued* to report the Account as charged-off with an alleged past due balance due of $14,296.

87.    Despite Plaintiff's Second Dispute, Experian *continued* to report the Account as charged-off with an alleged past due balance of $14,296.

88.    Clearly, Discover, Equifax, Experian, and Trans Union each failed to conduct a reasonable investigation in response to Plaintiff's Second Dispute, because if Discover, Equifax, Experian, and Trans Union had conducted reasonable investigations and re-investigations, Discover, Equifax, Experian, and Trans Union

would have known that Plaintiff was adjudicated not responsible for the Account no later than September 12, 2022 as reflected in public records.

89.     Discover's, Equifax's, Experian's, and Trans Union's failure to conduct reasonable investigations and re-investigations into Plaintiff's Second Dispute was unreasonable given the information provided in Plaintiff's Second Dispute.

90.     As of May 2025, Discover, Equifax, Experian, and Trans Union were *still* reporting the Account inaccurately as charged-off with an alleged past due balance of $14,296.

91.     On or about May 29, 2025, with the assistance of her attorneys, Plaintiff sent *another* letter to Equifax, Experian, and Trans Union *again* disputing Defendants' credit reporting of the Account, *again* advising that the Account should be deleted, and *again* demanding that Equifax, Experian, and Trans Union investigate and update accordingly (hereinafter, Plaintiff's "Third Dispute").

92.     Importantly, Plaintiff *again* enclosed copies of her Driver's License, Social Security Card, residential lease agreement, Zephyrhills Police Report, a copy of the Final Judgement and Decree of Divorce, and relevant transcript pages from Plaintiff's November 1, 2021 divorce hearing in support of her Third Dispute.

93.     Plaintiff's Third Dispute provided Equifax, Experian, and Trans Union with information sufficient to identify Plaintiff and investigate Plaintiff's Third Dispute.

94.     Equifax received Plaintiff's Third Dispute.

95.     Equifax communicated Plaintiff's Third Dispute to Discover, including

all enclosed documents.

96.    Discover received Plaintiff's Third Dispute from Equifax.

97.    Experian received Plaintiff's Third Dispute.

98.    Experian communicated Plaintiff's Third Dispute to Discover, including all enclosed documents.

99.    Discover received Plaintiff's Third Dispute from Experian.

100.    Trans Union received Plaintiff's Third Dispute.

101.    Trans Union communicated Plaintiff's Third Dispute to Discover, including all enclosed documents.

102.    Discover received Plaintiff's Third Dispute from Trans Union.

103.    On or about June 25, 2025, Trans Union sent a letter to Plaintiff in response to Plaintiff's Third Dispute with Trans Union's dispute results stating that Trans Union verified its reporting with Discover.

104.    Despite Plaintiff's Third Dispute, Trans Union *continues* to report the Account as charged-off with an alleged past due balance due of $14,296.

105.    On or about July 28, 2025, Equifax sent a letter to Plaintiff in response to Plaintiff's Third Dispute with Equifax's dispute results stating that Equifax verified its reporting with Discover.

106.    Plaintiff did not receive dispute results from Experian regarding Plaintiff's Third Dispute.

107.    As such, Experian did not investigate or re-investigate Plaintiff's Third Dispute and did not send dispute results to Plaintiff.

108.    Despite Plaintiff's Third Dispute, Experian *continues* to report the Account as charged-off with an alleged past due balance of $14,296.

109.    Clearly, Discover, Equifax, Experian, and Trans Union each failed to conduct a reasonable investigation in response to Plaintiff's Third Dispute, because if Discover, Equifax, Experian, and Trans Union had conducted reasonable investigations and re-investigations, Discover, Equifax, Experian, and Trans Union would have known that Plaintiff was adjudicated not responsible for the Account no later than September 12, 2022, as stated by public record.

110.    Discover's, Equifax's, Experian's, and Trans Union's failure to conduct reasonable investigations and re-investigations into Plaintiff's Third Dispute was unreasonable given the information provided in Plaintiff's Third Dispute.

111.    Despite Plaintiff's repeated disputes, Discover, Equifax, Experian, and Trans Union are *still* reporting the Account as charged-off with an alleged past due balance due of $14,296.

## DAMAGES

112.    As a result of Defendants' unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

113.    Following Plaintiff's First Dispute, Equifax, Experian, and Trans Union generated and published Plaintiff's credit reports containing the Account and reporting

17

errors.

114.    Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's documents enclosed with her repeated disputes.

115.    Plaintiff retained Swift Law, PLLC and Ricardo & Wasylik, PL for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

116.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

117.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

118.    Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and

confusion, believing that despite being adjudicated not responsible for the Account and all financial responsibility regarding the Account, Plaintiff must simply endure Defendants' unlawful reporting of the Account.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(as to Discover)**

Plaintiff re-alleges paragraphs one (1) through one hundred eighteen (118) as if fully restated herein and further states as follows:

119.    Discover is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly investigate/re-investigate Plaintiff's numerous disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and Trans Union delete the reporting of the Account on Plaintiff's credit reports and credit file after investigating/re-investigating Plaintiff's repeated disputes.

120.    As described above, Plaintiff's ex-husband fraudulently opened the Account in Plaintiff's name resulting in a fraudulent balance, Plaintiff filed a police report with the Zephyrhills Police Department regarding the fraudulent Account, and Plaintiff was adjudicated as not responsible for the Account no later than September 12, 2022.

121.    Despite Plaintiff not owing a balance on the Account no later than September 2022, Discover failed to request that the national credit bureaus delete their

reporting of the Account, and instead reported the Account as charged-off with an alleged past due balance due of $14,296.

122.    During or about January 2025, Discover received notice of Plaintiff's First Dispute from Equifax, Experian, and/or Trans Union, and Discover received copies of all documents enclosed with Plaintiff's First Dispute, which included copies of Plaintiff's Driver's License, Social Security Card, residential lease agreement, Zephyrhills Police Report, and a copy of the Final Judgement and Decree of Divorce in support of her dispute.

123.    Following Plaintiff's First Dispute, Discover confirmed and/or verified its false reporting of the Account to Equifax, Experian, and/or Trans Union as charged-off with an alleged past due balance of $14,296, and Discover failed to request that Equifax, Experian, and Trans Union delete and/or suppress their reporting of the Account.

124.    During or about March 2025, Discover received notice of Plaintiff's Second Dispute from Equifax, Experian, and Trans Union, and Discover received copies of all documents enclosed with Plaintiff's Second Dispute, which included copies of Plaintiff's Driver's License, Social Security Card, residential lease agreement, Zephyrhills Police Report, a copy of the Final Judgement and Decree of Divorce, and relevant pages from Plaintiff's divorce hearing dated November 1, 2021 in support of her dispute.

125.    Following Plaintiff's Second Dispute—which enclosed a copy of the Final Judgement and Decree of Divorce— Discover *again* confirmed and/or verified

its reporting to Equifax, Experian, and Trans Union, *continued* to report the Account as charged-off with an alleged past due balance due $14,296, and Discover *still* failed to request that Equifax, Experian, and Trans Union delete their reporting of the Account.

126.    During or about May 2025 or June 2025, Discover received notice of Plaintiff's Third Dispute from Equifax, Experian, and Trans Union, and Discover received copies of all documents enclosed with Plaintiff's Third Dispute, which included copies of Plaintiff's Driver's License, Social Security Card, residential lease agreement, Zephyrhills Police Report, a copy of the Final Judgement and Decree of Divorce, and relevant pages from Plaintiff's divorce hearing dated November 1, 2021 in support of her dispute.

127.    Following Plaintiff's Third Dispute—which enclosed a copy of the Final Judgement and Decree of Divorce and relevant pages from Plaintiff's divorce hearing dated November 1, 2021—Discover *again* confirmed and/or verified its reporting to Equifax, Experian, and Trans Union, *continued* to report the Account as charged-off with an alleged past due balance of $14,296, and Discover *still* failed to request that Equifax, Experian, and Trans Union delete their reporting of the Account

128.    Plaintiff was adjudicated as not responsible for the Account no later than September 12, 2022 and provided documents proving the same to Defendants via Plaintiff's repeated disputes.

129.    As such, it is inaccurate and/or materially misleading to report the Account on Plaintiff's credit reports and in Plaintiff's credit files.

130.    Discover's refusal to request that Equifax, Experian, and TransUnion delete the tradeline associated with the Account was done intentionally, willfully, and/or knowingly as Discover clearly possessed knowledge of Plaintiff's release from responsibility regarding the Account.

131.    Discover's investigations/re-investigations were not conducted in good faith.

132.    Discover's investigations/re-investigations were not conducted reasonably.

133.    Discover's investigations/re-investigations were not conducted using all information reasonably available to Discover.

134.    As a result of Discover's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Discover's erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

135.    Discover defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Discover unfairly discriminated against Plaintiff by ignoring— or failing to reasonably review—Plaintiff's documents enclosed with her repeated disputes.

136.    Discover's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

137.    Discover's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681c-2**
**(as to Defendants Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred eighteen (118) as if fully restated herein and further states as follows:

138.    Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Sections 1681c-2 by failing to block information in Plaintiff's credit file that was identified by Plaintiff as information that resulted from an alleged identity theft within four (4) business days after receiving: (i) appropriate proof of Plaintiff's identity; (ii) a copy of an identity theft report; (iii) Plaintiff's identification of the information that resulted from identity theft and fraud; and (iv) a statement by Plaintiff that the disputed information is not information relating to any transaction by Plaintiff.

139.    Equifax, Experian, and Trans Union each willfully and/or negligently

failed to block or delete information disputed by Plaintiff resulting from identity theft and fraud.

140.     More specifically, through Plaintiff's repeated disputes, Plaintiff provided Equifax, Experian, and Trans Union with information sufficient for the credit bureaus to corroborate Plaintiff's identity, such as her name, date of birth, full social security number, and current address.

141.     Also, through Plaintiff's repeated disputes, Plaintiff provided Equifax, Experian, and Trans Union with copies of a police report from the Zephyrhills, Florida Police Department, her Driver's License, and her Social Security Card, and each dispute asserted that Plaintiff was the victim of identity theft and fraud.

142.     Further, Plaintiff's repeated written disputes clearly advised Equifax, Experian, and Trans Union that the derogatory information reported by Defendants on the Account purely resulted from identity theft and fraud.

143.     Moreover, Plaintiff's repeated written disputes clearly advised Equifax that Plaintiff did not authorize the transactions creating the alleged Account balance and did not benefit from the transactions in any manner.

144.     Despite Plaintiff *repeatedly* advising Defendants that Plaintiff did not initiate the balance transfer that created the alleged Account balance, did not authorize any other person to initiate the cash transfer in her name or on her behalf, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made with the cash advance—and therefore, the Alleged Debt was a result of identity theft and fraud—Equifax, Experian, and Trans Union *repeatedly*

24

failed to block the Account information disputed by Plaintiff within four (4) business days of Equifax, Experian, and Trans Union receiving Plaintiff's disputes.

145.  Instead, Equifax, Experian, and Trans Union continued to report the Account with a past due balance and as charged off, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

146.  As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

147.  Overall, Equifax, Experian, and Trans Union defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Equifax, Experian, and Trans Union unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's documents enclosed with her repeated disputes.

148.  Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

149.  Equifax's, Experian's, and Trans Union's violations of 15 United States

Code Section 1681c-2, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(as to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred eighteen (118) as if fully restated herein and further states as follows:

150.    Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

151.    Equifax, Experian, and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

152.    As described above, Plaintiff's ex-husband fraudulently opened the Account in Plaintiff's name resulting in a fraudulent balance, Plaintiff filed a police report with the Zephyrhills Police Department regarding the fraudulent Account, and Plaintiff was adjudicated as not responsible for the Account no later than September 12, 2022.

153.    Despite Plaintiff being adjudicated as not responsible for the Account no

later than September 12, 2022—and despite Plaintiff's repeated disputes advising Equifax, Experian, and Trans Union of the same—Equifax, Experian, and Trans Union failed to delete their reporting of the Account.

154.    Instead, despite Plaintiff not owing a balance on the Account as a result of being adjudicated not responsible for the Account in her divorce proceedings no later than September 12, 2022—and despite Plaintiff notifying Equifax, Experian, and Trans Union of the same through Plaintiff's disputes including enclosed copies of court documents—Equifax, Experian, and Trans Union continued to report the Account as charged-off with an alleged past due balance due of $14,296.

155.    Such reporting of the Account is false and evidences Equifax's, Experian's, and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

156.    As such, it is inaccurate and/or materially misleading to report the Account on Plaintiff's credit reports and in Plaintiff's credit files at any time after September 12, 2022.

157.    Between 2022 and the date of this Complaint, Equifax, Experian, and Trans Union generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

158.    Overall, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-

investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax, Experian, and Trans Union credit reports and credit file.

159.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Equifax's, Experian's, and Trans Union's erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

160.    Overall, Equifax, Experian, and Trans Union defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Equifax, Experian, and Trans Union unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's documents enclosed with her repeated disputes.

161.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

162.    Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code,

Sections 1681n, or 1681o, or both.

## COUNT FOUR:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE
## SECTIONS 1681i(a)(1), i(a)(4), i(a)(5), and i(a)(6)
### (as to Equifax, Experian, and Trans Union)

Plaintiff re-alleges paragraphs one (1) through one hundred eighteen (118) as if fully restated herein and further states as follows:

163.    Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1),  1681i(a)(4), 1681i(a)(5), and 1681i(a)(6) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified; and (4) failing to provide written notice of dispute results to Plaintiff within five (5) business days after the completion of a reinvestigation.

164.    More specifically, Equifax, Experian, and Trans Union willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

165.    Plaintiff's ex-husband fraudulently opened the Account in Plaintiff's name resulting in a fraudulent balance, Plaintiff filed a police report with the

Zephyrhills Police Department regarding the fraudulent Account, and Plaintiff was adjudicated as not responsible for the Account no later than September 12, 2022.

166.    Despite Plaintiff being adjudicated as not responsible for the Account no later than September 12, 2022—and despite Plaintiff's repeated disputes advising Equifax, Experian, and Trans Union of the same—Equifax, Experian, and Trans Union failed to delete or update their reporting of the Account.

167.    After receiving Plaintiff's First Dispute, Equifax, Experian, and Trans Union failed to request any documents from Discover.

168.    Instead, following Plaintiff's First Dispute, Equifax parroted purported verifications from Discover, and continued to report the Account on Plaintiff's Equifax reports and in Plaintiff's Equifax credit files.

169.    Neither Experian nor Trans Union provided dispute results to Plaintiff in response to her First Dispute, and neither Experian nor Trans Union updated their reporting of the Account following Plaintiff's First Dispute.

170.    After receiving Plaintiff's Second Dispute—which enclosed a copy of the Final Judgement and Decree of Divorce —Equifax, Experian, and Trans Union *again* failed to request any documents from Discover and wholly ignored the court documents Plaintiff enclosed with her Second Dispute.

171.    Instead, following Plaintiff's Second Dispute, Equifax, Experian, and Trans Union *again* parroted purported verifications from Discover, and *still* continued to report the Account on Plaintiff's credit reports and in Plaintiff's credit files.

172.    Equifax did not provide Plaintiff with dispute results regarding her

Second Dispute.

173.    After receiving Plaintiff's Third Dispute—which enclosed a copy of the Final Judgement and Decree of Divorce and relevant pages from Plaintiff's divorce hearing dated November 1, 2021—Equifax, Experian, and Trans Union *again* failed to request any documents from Discover and wholly ignored the court document Plaintiff enclosed with her Third Dispute.

174.    Instead, following Plaintiff's Third Dispute, Equifax, Experian, and Trans Union *again* parroted purported verifications from Discover, and *still* continued to report the Account on Plaintiff's credit reports and in Plaintiff's credit files.

175.    Experian did not provide Plaintiff with dispute results regarding her Third Dispute.

176.    Rather than conduct its own, independent investigation/re-investigation regarding Plaintiff's repeated disputes, Equifax, Experian, and Trans Union solely relied on Discover's blanket and parroted assertions that Defendants were entitled to report the Account as charged-off with an alleged past due balance due of $14,296.

177.    Equifax's, Experian's, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

178.    Equifax's, Experian's, and Trans Union's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax, Experian, and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

31

179. Such reporting is false and evidences Equifax's, Experian's, and Trans Union's respective failures to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

180. Equifax's, Experian's, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

181. Equifax's, Experian's, and Trans Union's investigation/reinvestigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by Discover.

182. Equifax's, Experian's, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted in good faith.

183. Equifax's, Experian's, and Trans Union's investigation/reinvestigation procedures are unreasonable.

184. Equifax's, Experian's, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax, Experian, and Trans Union.

185. Equifax's, Experian's, and Trans Union's investigation/reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

186. As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Equifax, Experian, and Trans

Union's erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

187.    Overall, Equifax, Experian, and Trans Union defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Equifax, Experian, and Trans Union unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's documents enclosed with her repeated disputes.

188.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

189.    Equifax's, Experian's, and Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Discover, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

b.       Actual damages in an amount to be determined at trial;

c.       Compensatory damages in an amount to be determined at trial;

d.       Punitive damages in an amount to be determined at trial;

e.       An award of attorneys' fees and costs; and

f.       Any other such relief the Court may deem proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury on all issues triable by right.

<u>**SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**</u>

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**
/s/ *Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com

*~and~*

**RICARDO & WASYLIK, PL**
**Michael Wasylik, Esq., FBN 67504**

34

P.O. Box 2245
Dade City, FL 33526-2245
Phone: (813) 774-8509
mike@ricardolaw.com
*Co-Counsel for Plaintiff*